May it please the Court, my name is Michael Thomas, I'm the Congressman in the Courier who will represent the petitioners in this matter. The sole issue really in front of your Honors today is whether or not Matthew Bowes as a seaman is in his employment with American Marine. And therefore excluded from receiving benefits under the Longshore and Harbor Warmer Compensation Act pursuant to Section 23G of that Act. The primary determination whether a person is a seaman is found in the Chandra's v. Lotz's case. Which directs us to determine whether or not a worker contributes to the function or mission of a vessel. And whether or not that worker has a connection to a vessel or fleet of vessels in navigation that is substantial in both nature and duration. There is no question in this case that the the employee, Mr. Bowes, has met the contribution to the vessel prong of that test. And there is also no question that was a real question here, you know, on the duration element. In other words, whether or not the the rule of thumb. That's right. 30 percent should not be applied. I guess you're you're positioned. One of my positions is that it should not be applied. Yes. And tell us why not. Well, Your Honor, the Chandra's case directs us that to watch out for tests. It said to beware of tests that tend to become the end in themselves. And that's exactly what happened here. The ALJ blindly applied the Chandra's test. The Chandra's test was meant to distinguish sea-based workers, whose jobs regularly take them to sea and expose them to the perils of the sea, from land-based workers who happen to work aboard a vessel from time to time and are not generally exposed to the perils of the sea. And it directed us to look at the totality of the employment, not what the person's job title was or what they were doing at that moment. The Chandra's court said that the Jones Act remedies reserve for sea-based maritime employees whose work regularly exposes them to the hazards of the sea and directed us to work with the totality of the employment. If you look at Mr. Bose's employment in his totality, what do you find? He was a commercial diver for many years. He was employed as a commercial diver by American Marine full-time for eight years and a little bit longer than that on a part-time basis as well. He regularly worked aboard American Marine's vessels whose missions were diving missions, buoy maintenance, salvage operations, undersea inspections, underwater repair vessels, and dredging operations. All of these missions required divers, and Mr. Bose was one of the divers that performed the functions of those vessels. Mr. Bose, when he was not diving, was preparing to dive, preparing the vessels to dive, preparing his equipment for diving. After a mission, he demobilized the vessel, in other words, breaking it down and getting it back. He apparently performed a lot of his dives from a dock, right, not from a ship. Well, I think there was a substantial amount of work done from a dock as well, yes, Your Honor, that's true. Is it your position that as a diver there's a presumption that he's a seaman and not a longshoreman harbor worker? Yes, Your Honor. That's the way I read your brief anyway. Yes, Your Honor. I don't see that in any of the cases, though, that I don't see that there's anything that would indicate that per se, because you're a diver, you're probably a seaman. Well, I think, Your Honor, that the case law shows that diving is a maritime employment, and I think nobody could argue that it isn't a maritime employment. I mean, it can't be done on land, obviously. The question becomes is there a connection to vessels or a fleet of vessels, and there certainly is that connection to a fleet of vessels in this case. Well, you could say the same thing about longshoremen. They spend half their time loading and half their time unloading, so they're half time on the dock and half time on the vessel. And if those longshoremen were assigned to an employer's fleet of vessels and were exposed to the perils of the sea, we know from the Gazoni case that those longshoremen might also be qualified as Jones Act seamen, and very often they become Jones Act seamen by virtue of the totality of their employment, which is exactly what I'm asking this Court to look at here. But even if you set aside the time that Mr. Bowes spent diving off a dock, he certainly spent the majority of his time in service of a vessel. He does all the time. So does a longshoreman service a vessel? A longshoreman services a vessel all his time. Not the same vessel or fleet of vessels, though, Your Honor. But he's always unloading or loading a vessel. But he won't meet the substantial connection in nature to any identifiable fleet of vessels because he's unloading other people's vessels. That's why I ask you, is the fact that someone's a diver, does that mean he's probably a seaman and not a longshoreman? I think yes, Your Honor. I think that if a person is a diver who dives off vessels and whose vessels regularly take him to sea, then yes, you don't have to get to the durational requirement that we find in Chandra's, because he's already a maritime employee who's exposed regularly to the perils of the sea. And the evidence in this case shows he went on many, many missions, diving missions, on vessels. No, but you see, when you say many, many, I mean, that doesn't, you know, that doesn't jive with the record because he spent less than 30 percent of his time at sea, right? That's because he went, you know, his sea dives were very, very infrequent and far between. I think, Your Honor, the record reflects that his dives were frequent on a more-than-weekly basis. He was 70-something dives in the course of a year, 70-something voyages in the course of a year. And the ALJ, in his opinion, is 71. I think it was 77 voyages. In other words, diving off vessels in the year prior to his injury. And that, if that isn't a regular exposure to the perils of the sea, I'm not sure what is. It's on a more-than-weekly basis. And the ALJ in his decision, I think there's a typographical error in that decision because he says that the jobs, though infrequently, were short in duration. In other words, what the ALJ did, and where part of his error was, Your Honor, is he added up the time. Only beyond the breakwater. He didn't consider time and other service to the vessel in navigation when the vessel was not underway. And that's part of the error. But what he did for the vessel, at other times, I think it's what Judge Cohen is referring to, it's the same thing that the longshoreman does. Right? Yes, but the longshoreman would not have a substantial connection to an identifiable fleet of vessels. Longshoreman is out at the port here in Oakland, for instance, and the ship comes in from Korea and from Japan and from San Diego and from wherever else, and that ship belongs to some other employer, and he goes on there and he unloads and unloads it. And that's why he's a longshoreman. He's a stevedore. He doesn't have a connection to an identifiable fleet of vessels that American Marine has. American Marine has four or five vessels. I don't remember exactly what it was. As a practical matter, your position, you'd rather him be a seaman because I guess he feels that he can't prove any negligence, so that he would only be entitled to maintenance and cure. Would that be the bottom line here? I mean, practically, is that it? I guess as a matter of a bottom line, that is probably it, but, you know, I'm also interested in the appropriate application of this law because I practice it all the time and have to deal with this issue on a frequent basis. So it's important that if we have a seaman issue in a longshore case, which is primarily what my practice is, if we have that seaman issue, that we know what the test is going to be. And what the judge did in this case, you know, again, I don't believe you need to reach the durational requirement of Chandra's in this case because the totality of Mr. Bose's employment was sea-based. He was regularly exposed to the perils of the sea. He was assigned to a fleet of vessels. He was a member of the crew of those vessels. You don't need to parse out every second of his time to determine did he spend 30 percent of his time underway. But even if you do, the judge inappropriately applied the Chandra standard. Because this is something that I don't deal with every day. If this were a Jones Act case, are they entitled, would Bose be entitled to maintenance and cure with, just as a, on a strict liability basis? Bose would be entitled, if he's a seaman, he's entitled to maintenance and cure under the general maritime law, not under the Jones Act. But, yes, Your Honor, they go hand in hand together. Without having to prove negligence? That's correct. That's all he would get. That's all he would get. He would get maintenance and cure. But maintenance and cure can go for a longer period of time than what the Longshore and Harbor Workers Act would provide. I mean, he'd get more money if he got maintenance and cure, wouldn't he? Typically, no. Maintenance and cure is typically less than what an individual's temporary disability rate would be under the Longshore Act. They get no permanent disability as well. That is correct. They are entitled to a jury trial, and they're entitled to prove negligence and damages. And in most cases, people opt to go the Jones Act. That's what I'm getting at. Jones Act, he would probably wind up getting more money if he went under the Jones Act. Yes, if he could prove it. Well, he'd have to show negligence. He would have to show negligence, and he'd have to prove his damages. And it would be subject to, you know, comparative negligence and other. Even under your briefing, you acknowledge that our standard of review here is rather narrow, don't you? I think, Your Honor, that it's a de novo standard of review because the judge misapplied the law. It is a mis- Well, as to the legal issue, of course. But as to his view of the evidence and the facts of it, do you agree with me or am I off base that the facts of his employment are what should drive our decision here? Yes, Your Honor. Okay. And, of course, those same facts were before the administrative agency. Yes. So our review is not what we would do if we were on the board, but what the board did was reasonable. Not whether we would do the same thing. In applying the facts, but the gripe that we have with the ALJ and the BRB's application is that they misapplied the law. How did they misapply the law? Well, setting aside the diver exception that I've asked the Court to consider, in applying Chandra's, he took the durational element. He said he needs the Mr. Bowes needs to spend 30 percent of his time in service of a vessel in order to qualify the durational element under Chandra's. But when he did that, he only considered time spent underway. Not all time spent in service of the vessel. So, in other words, he took the, he missed the nature, the substantial question in nature requirement, which is does the employee's job take him or her to sea? And he applied that to the durational requirement, which only required that 30 percent of an employee's time be spent in service of the vessel. And if you take the facts that are in the record and you add up the time that was spent diving and being a passenger on a vessel for a dive commission, which was between 21.3 and 23.6 percent, but then you add on to that the mobilization and demobilization of the vessels, which the judge refused to consider because he said the boat was docked and it was not underway. That's an inappropriate standard. For the durational element, you don't have to prove that a person's employment took them to sea. And we know this from the Cabral case and also from the Shuring case, which is maybe the most recent case that the NASA. You're running out of time, but I want you to answer one question for me. You just said something about, well, putting aside the diver exception. Is it your position that there's an exception if a person's occupation is, I'll say, a deep sea diver? I believe that. That per se makes that person a seaman? If that person's in the service of vessels, yes, Your Honor. Regardless of how many dives you make, suppose he made one dive a year, two dives a year. Well, I think when you get into that, you'd have to look at the substantial connection to a vessel or fleet of vessels. They still need that. Don't you apply the temporal element? I don't think you do, because a diver — Your Honor, a diver can't — you can't be underwater 100 percent of your time. And that's kind of one of the absurdities of this result. And the case law, and it's all in my brief, and I'd like to reserve a little bit of time for rebuttal, shows that divers have been treated differently and have been treated as a maritime occupation, and these are seagoing people. I'm not — Mr. Bose is not somebody who was diving off the shore. Okay. Just tell me, what's your best case for the diver exception, I'll call it? I would say probably the Kiar case, which is a pre-Chandrase case and comes out of the Ninth Circuit, but also the Third Circuit in Folk and the Fifth Circuit in Roberts have recognized this diver exception does live post-Chandrase. Thank you. I'd like to reserve whatever time I have left for rebuttal. Thank you. We'll round it up to a full minute. Now, I see for the Respondents, are you folks going to split your time? Yes, Judge Silverman. Thank you. I'm Joshua Glellen, appearing on behalf of Mr. Bose. Thank you, Mr. Fair. Excuse me for a second. I wonder, could we put seven and a half minutes on the clock so we divide it up fairly? Great. Thank you. May it please the Court. First, we don't even believe that we're properly here. Neither the employer, which purports to have been insured, nor Commerce and Industry Insurance Company, the other petitioner before the Court, is adversely affected by the decisions below. Commerce and Industry was not named in the ALJ's award. A different insurance company was. Commerce and Industry simply says, well, that doesn't make any difference who was named below. We're actually the insurance carrier, and we're the ones who've been paying Mr. Bose benefits pursuant to the ALJ's award. That is certainly true. Acknowledge that. But if Commerce and Industry were to stop those payments, we would not look to them. We would not try to enforce the existing award against them. They're not named as a liable party. A different insurance company is. Nor, indeed, would we look to American Marine, the employer, because it was found by the — in the proceedings below to have been an insured employer. But as the employer, it still has the statutory obligation, right? Yes. Suppose the insurer went bankrupt. Absolutely. If the insurance company went bankrupt, then we would look to the employer. Is an American Marine properly here? I don't think so. No. I think — not without their named insurance carrier. There has been no showing that there is even a remote possibility that the named insurance carrier is going to be unable now or at any point in the future to make the payments called for. The Act provides explicitly for the discharge of the employer's liability — responsibilities and liabilities under the Act by its longshore insurance carrier. That was American Home Insurance represented before the ALJ, that it was the insurance carrier for American Marine. And it is named as such on the ALJ's award. That award will remain enforceable against American Home Insurance. Now, if it went under, then yes, American Marine would be called upon to make payments. If it couldn't get access to an uninsured — excuse me, to an insurance guarantee fund. But the Hawaii Insurance Guarantee Fund would protect American Marine even in that event. So there has certainly been no showing by either of the Petitioners of how it is that they are adversely affected by the decision below. It is American Home that we would look to if commerce and industry were to cut off the payments. And American Home did not appeal from the award, so the Court is not in a position to grant it any relief, even if it were to reverse the award. The Court has devoted considerable attention over the years to simplifying the enforcement procedures under the Act. And the Petitioners' position that the naming of American Home Insurance as the insurance carrier in the ALJ's award is of no legal consequence because it's the wrong insurer would be completely incompatible with the simplification and streamlining of those enforcement proceedings that the Court has gone to quite a bit of trouble to create, starting more than 25 years ago with the Providence, Washington decision. So we asked Mr. Thomas, for those of us who aren't experts on this, why is it advantageous to your client to proceed under the Longshore Act instead of the Jones Act? I think what the Court has already discovered through its questions on this subject do accurately sum it up. It's a no-fault regime. Maintenance and cure is the no-fault part of the Siemens remedies, but it is far inferior to Longshore Act. benefits, both in weekly amount and in choice of medical treatment and in duration of those benefits. And for a full damages recovery under the Jones Act, yes, it is necessary for the claimant to show employer negligence. Now, there's some possibility that employer negligence could have been shown here, but probably not with respect to what happened on the seafloor, but the back injury occurred when he was being hauled aboard the dive vessel after his leg had been hurt. So there may have been negligence up there on the surface, but in any event, we didn't go that route. And I'm not sure how often, frankly, the Jones Act remedy really is superior to the Longshore Act remedy for the injured worker. It's certainly more advantageous for the attorney for the injured worker, but not necessarily for the worker. Thanks. Well, why isn't it sensible to consider a deep-sea diver, you know, who's attached to a group of a fleet of boats to be a seaman? I mean, you necessarily have to perform that profession at sea, right? Actually, no. You can perform that profession as Mr. Bowes did for his other employer and throughout his career before he came to American Marine and for part of his work, indeed, for American Marine itself in the harbor without diving from vessels at all. These hardhat divers clean the hulls of vessels. They inspect the hulls of vessels. They perform many contracts within the harbor, diving from piers or walking in from shore even. That was a significant part of Mr. Bowes's work, both for American Marine and in his other job, for which he was on call and had time off whenever he needed it, from American Marine. Well, which ties into Mr. Thomas's other point that it was an error for the ALJ to not to include a time he spent in the harbor as part of his time in service of the fleet. Perhaps that is Mr. Thomas's point, but I don't think there's anything to it. Mr. Thomas is actually pointing to the great portion of his time that Mr. Bowes spent getting vessels ready to go on the trips, which was done in the shop on land and on the pier and driving forklifts and tractors back and forth from the pier onto the employer's barges. That is typical longshore work. I think the final point I'll make, if I may have just a second here, is contrary to Mr. Thomas's contention, many longshoremen work entirely on vessels that are an identifiable fleet. If a longshoreman is working at the APM terminal on the other side of the bay bridge here, immediately by the end of the bridge, they're always working on loading and unloading vessels for a single shipping line. There's always horizon lines. All the ships at that terminal are horizon lines, and that's typical in this port and many others. Those people, under his approach, would be converted to crew members despite the fact that they never leave the pier aboard a vessel. Thank you very much. That's the critical point. Thank you. We'll hear from Mr. Boyle. I want to make sure his microphone is on. Good morning, sir. Can you hear me okay? Yes, you bet. We have a little bit of a delay, so if I step on some of your questions, I apologize. The echo from my voice is sometimes blocking out the feedback from you guys. Your Honor, for pointing the test, and I think that was an example. I'm sorry. That was my voice bouncing back to me. I will try to ignore that. Your Honor, the point of the test in Shatner Sea Lances is to distinguish between workers who have mixed duties, some land-based and some sea-based, and determine which ones are seamen or crew members, covered by the Jones Act, and which ones are land-based workers, covered by the Longshore Act. Mr. Mose was a maritime worker with mixed duties, some land-based and some sea-based, so the obvious way to determine whether he was a seaman or a crew member or not is to apply the Shatner Sea Lances test in whole. Obviously, what Mr. Thomas is arguing is that you should ignore part of that test, the temporal element that requires a worker to spend 30 percent of his time in sea-based duties, and the reason you should ignore that is because Mr. Mose's job title was commercial diver, and under the employer's rationale, anyone with the job title commercial diver should simply be deemed to be a seaman, regardless of how much time they spend actually in sea-based duties. Well, not only is that contrary to the Shatner's test, but it is contrary to what the ALJ found that Mr. Mose only spent 22 percent of his time. I forgot to mention that. It's contrary to what the court actually said at Shatner's, which is that the requirement is for nature and duration, not nature or duration, and the court actually said that some workers who unmistakably confront the perils of the sea, often in extreme form, will not be considered seaman, Jones Act seaman, if they don't spend a significant enough portion of their time performing those duties. That's what the ALJ found here, and that is completely consistent with the Shatner's test. There is no exception for divers. This is a test for mixed-duty workers, regardless of what their title might be. And we have several cases cited where the titles are harbor-worker, longshore-sounding titles, but the court found that these people could be seaman. It works the opposite way, too. The focus is on what the duties are, not what the job title is. I apologize. I thought I heard a question coming through. The employer is arguing the opposite. Mr. Boyle, I want to ask you a question on an entirely different subject. Does the director have any views on whether or not this case is properly before this court, in other words, on the appellate jurisdiction issue that Mr. Gilliland addressed? We did not take a position, Your Honor, but I can give you our position if you'd like. Yes, please. Was that a yes, Your Honor? Yes. Okay. Thank you. I'm sorry. Your Honor, I don't think this case should be dismissed. As the court was pointing out earlier, American Marine is primarily liable for Mr. Bo's benefit. If American Home or the other insurance company happens to go belly up, then American Marine would be on the hook for the benefits here. This is very different from the case in the Second Circuit's case in Delmatura, where the insurer paid all of the benefits in full. Then the employer, without the insurer, appealed, and the Second Circuit essentially said, we can't give you any remedy. You're asking for an advisory opinion. I don't think that's what AMC is doing here. I think relief can be provided to them, even though the insurer is paying the benefits at the moment. The rest of the case, Your Honor, just goes to substantial evidence. Whether the ALJ ended up with the numbers right, whether he divided the duties correctly, I think those are all factual findings that have to be supported, provided the evidence in the record. Unless the Court has any further questions. I don't think so. Thank you very much, Mr. Boyle. Thank you. Okay. I think we go back now to Mr. Thomas, who gets the last word. Mr. Your Honor, it represents one of the few times I get the last word from Mr. Glowen, so I'll give it to David. I want to address just a few points. First of all, the order itself, the ALJ's order, is against the American Marine. It is hereby ordered, American Marines shall pay claim in compensation for TPP. American Marines shall continue to pay all reasonable and necessary medical expenses. American Marines shall pay interest. American Marines shall receive credit, and so on and so forth. This order is against the American Marine. The fact that they indemnify themselves, which they are legally required to do, is really immaterial. With regard to the SEMA status issue, again, the durational requirement under Chandra's does not require employees to be at sea. That's the nature requirement. And these, I believe Mr. Glowen mentioned, Horizon Lines workers, they don't meet the nature extent, because their job does not take them to sea. Their job does not expose them to the perils of the sea. And that's entirely different than this diver. He meets the nature requirement. It's not an issue here, the judge found him at the nature requirement. And he meets the duration requirement because that time that he spent mobilizing and demobilizing vessels and repairing and cleaning and maintaining his dive equipment in preparation and after missions should properly be counted as in service of the vessel, which is the proper durational standard under Chandra's. Thank you very much, Mr. Tillman. Gentlemen, all three of you, thank you so much. The case does start. You're submitted and will stand in recess. Good morning. All rise.
judges: Cowen, Tashima, Silverman